Morris ADES, Apmont Group, Inc., the Equity Group, Inc. Profit Sharing Trust, Jerome I. Feldman, S. Marcus Finkle, Sandra Glicksman, Goldstein, Golub & Kessler Profit Sharing Trust, Philippe Grelsamer, Richard Kessler, James J. Manning, Markin Trading Corp. Pension Trust, Randolph K. Pace, Anna B. Rosen, Dennis Silverman and Martin Stern, Plaintiffs,

v.

DELOITTE & TOUCHE, Winfried Schuberth, John Hanny, David Randall and Luis Santacaterina, Defendants.

No. 90 Civ. 4959 (RWS).

United States District Court,
S.D. New York.

Aug. 11, 1992.

Abbey & Ellis (Lee Squitieri, of counsel), New York City, for plaintiffs.

Shea & Gould (Leon P. Gold, Mark E. Davidson, Victor Mustelier, Bernard J. Garbutt, III, of counsel), New York City, for defendant Deloitte & Touche.

Kenneth A. Elan, New York City, for defendants Winfried Schuberth and David Randall.

## OPINION

SWEET, District Judge.

Defendants Deloitte & Touche ("D & T"), Winfried Schuberth ("Schuberth") and David Randall ("Randall") have moved for an order dismissing the amended complaint against them pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P.[1] For the following reasons, the motion is denied.

### The Parties

The plaintiffs in this action[2] (the "Investors") are a number of individual and corporate investors who purchased promissory notes (the "Notes") issued in August 1988 by QMAX Technology Group, Inc. ("QMAX"), a company which in 1988 was engaged in the development, manufacture and marketing of cosmetics and skin care products. QMAX defaulted on the Notes and filed for bankruptcy in August 1989.

D & T is the successor in interest to Touche Ross & Co. ("Touche"), a national accounting firm which acted as QMAX's independent auditor since prior to 1987. The Amended Complaint alleges that D & T issued an unqualified opinion of the audited financial statements of QMAX for the fiscal year ended June 30, 1987 and later consented to the use of that opinion in the 1987 audited financial statements and various filings with the Securities Exchange Commission.

### Prior Proceedings

The complaint in *Ades v. Deloitte & Touche*, No. 90 Civ. 4959 (RWS) was filed on July 26, 1990. A substantially similar complaint was filed in the companion case of *Lane v. Deloitte & Touche*, 90 Civ. 5056 (RWS) on July 30, 1990 (together, the "Complaint"). The Complaint alleged violations of § 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)") and pendent state law claims. These claims were based on the allegation that the defendants knowingly misrepresented QMAX's financial condition in public filings and materials made available to the Investors prior to their purchase of the Notes. The portions of the Complaint relevant to D & T relate to alleged misrepresentations in a report, issued by D & T in August 1988 (the "Review Report") concerning QMAX's June 30, 1987 and March 31, 1988 financial statements, upon which the Investors allegedly relied in purchasing the Notes. These allegations fell into two broad categories: (1) claims that the work done by D & T for QMAX did not comport with generally accepted accounting principles ("GAAP"), generally accepted accounting standards ("GAAS") and other accounting regulations and guidelines (the "GAAS/GAAP Allegations") and (2) claims that D & T knew that various financial statements which they approved for QMAX contained materially inaccurate financial data (the "Substantive Allegations").

D & T moved to dismiss the Complaint against it on the grounds that it failed to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P. Finding that the Complaint did not set forth facts from which a strong inference of scienter could be drawn with respect to the "Substantive Allegations," on July 7, 1991 this court granted D & T's motion in part, dismissing those allegations but not the "GAAS/GAAP Allegations." *See Ades v. Deloitte & Touche*, slip op. at 5–7, 1991 WL 126043 (S.D.N.Y. July 7, 1991) ("*Ades I*").

---

1. Schuberth and Randall's participation in this motion consists solely of their attorney's affirmation stating that they join in the motion in reliance on D & T's papers. With the exception of the statute of limitations issue, however, there is no basis for these defendants to rely on the points and authorities raised by D & T's motion to dismiss. Both Messrs. Schuberth and Randall are officers and directors of QMAX. As such, D & T's arguments, which relate to allegations of *its* scienter with respect to allegedly fraudulent misrepresentations and omissions in a certain Review Report (as defined, *infra*), have no apparent relevance to these defendants.

2. This is a consolidation of two cases, *Ades v. Deloitte & Touche*, No. 90 Civ. 4959 (RWS) and *Lane v. Deloitte & Touche*, No. 90 Civ. 5056 (RWS). *See* Consolidated Amended Complaint (filed Feb. 14, 1992).

D & T moved to reargue that portion of the opinion in *Ades I* that denied dismissal of the "GAAS/GAAP Allegations." On January 2, 1992, the motion to reargue was granted and, upon reconsideration, the claims based on these allegations were dismissed on the grounds that the Complaint also failed adequately to plead scienter with respect thereto. *See Ades v. Deloitte & Touche,* slip op. at 7–8, 1992 WL 6142 (S.D.N.Y. Jan. 2, 1992) (*"Ades II"*). The Investors were granted leave to replead.

The Investors filed an amended and consolidated complaint on February 14, 1992 (the "Amended Complaint"). The present motion was filed on March 30, 1992. Oral argument was heard on May 13, 1992, at which time the motion was considered fully submitted.

*The Facts* [3]

Like the Complaint, the Amended Complaint asserts claims against D & T for primary and aiding and abetting liability under § 10(b) and Rule 10b–5 and for common law fraud, breach of contract, negligent misrepresentation and negligence. The Amended Complaint alleges that in mid–1988 QMAX issued the Notes to raise funds to meet certain immediate financial needs. The Notes were issued pursuant to the Securities Purchase Agreement between QMAX and each of the Investors. As a condition of the Investors' purchase of the Notes, QMAX was required to have D & T review, in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA"), its consolidated interim financial statements as of March 31, 1988 and for the three-month and nine-month periods ended March 31, 1987 and 1988 and to have D & T ascertain whether any material change in QMAX's financial condition had occurred in its consolidated balance sheet as of June 30, 1987 and its unqualified opinion on QMAX's consolidated financial statements for fiscal year 1987 since D & T's September 14, 1987 report on these items and to

consent to the use of its report in the Security Purchase Agreement.

According to the Amended Complaint, D & T represented in a report dated August 4, 1988 that it performed a review in accordance with AICPA standards of the consolidated interim financial statements of QMAX as of March 31, 1988 and for the three and nine month periods ended March 31, 1988 and 1987 (the "Review" and the "Review Report") and that these statements fairly represented the financial condition of QMAX and were in conformity with GAAP and other accounting standards. D & T also represented that it had previously examined, in accordance with GAAS, prior financial data for QMAX and that the information set forth in the accompanying condensed balance sheets as of June 30, 1987 was fairly stated in all material respects. By letter dated August 18, 1988, D & T consented to the use of the Review Report in the Securities Purchase Agreement between QMAX and the Investors (the "Consent Letter"). The Amended Complaint alleges that this letter constitutes a "subsequent events" review by D & T and an express and implied representation that there had been no material changed in QMAX's financial position from the date of the Review Report to the date of the Consent Letter.

The Amended Complaint alleges that after the closing of the sale of the Notes, D & T issued a qualified opinion expressing an uncertainty as to QMAX's ability to continue as a going concern due to, among other things, an increase in the allowance for doubtful accounts for fiscal 1988 over that previously disclosed in the financial statements that were the subject of the Review Report. On August 3, 1989, QMAX defaulted on the Notes and filed for protection under Chapter 11 of the Bankruptcy Code.

The Amended Complaint alleges that the Review Report contained material misrepresentations and omitted to state material facts of which D & T was aware or reck-

---

**3.** Although the facts giving rise to this action are discussed in *Ades I* and *Ades II,* familiarity with which is assumed, some repetition of the facts, as well as a description of the new allegations in the Amended Complaint, is helpful to an understanding of the conclusions reached below.

lessly disregarded relating to QMAX's financial condition and the conformity of the Review Report with GAAS, GAAP and other accounting standards. Specifically, the Amended Complaint alleges that the statements of accounts receivable, current assets and retained earnings in the condensed consolidated balance sheets were overstated by (1) $315,000 attributable to the premature booking of a sale to Estee Lauder in fiscal year 1987 (the "Estee Lauder Sale"); (2) $82,000 as a result of recording inventory that did not exist (the "Inventory"); and (3) the booking of $426,000 attributable to a transaction with Montreal Litho as a sale (the "Montreal Litho Sale") when in fact it was a consignment. The Amended Complaint further alleges that, in the face of D & T's representation that the financial statements were in conformity with GAAP and other accounting principles, each of the financial statements violated these standards due to D & T's failure to perform additional procedures warranted by information either known to or recklessly disregarded by D & T.[4]

*Discussion*

D & T moves to dismiss the Amended Complaint on the grounds that (1) it fails to plead fraud with particularity and (2) it is time-barred under the one-year/three-year statute of limitations for § 10(b) claims established in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) and *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (hereinafter *"Beam"*). With respect to the latter point, D & T argues that § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2236 (codified at § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1) ("§ 27A"), which proscribes the *pro forma* retroactive application of *Lampf*, is unconstitutional.

A.  *Statute of Limitations*

As D & T has not argued that the plaintiffs claims are untimely under the law applicable under § 27A, it is assumed for purposes of this motion that plaintiffs' claims would be timely under pre-*Lampf* law.  *See Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (prior to reaching constitutional question, court must consider nonconstitutional grounds for decision).

On June 20, 1991, the Supreme Court in *Lampf* adopted a uniform statute of limitations for actions under § 10(b) of one year after discovery of the facts constituting the alleged violation and three years after the alleged violation.  *Lampf*, —— U.S. at ——, 111 S.Ct. at 2782.  The same day, the Court handed down its opinion in *Beam*, in which six Justices rejected "selective prospectivity," a practice whereby a court applies a new rule in the case in which it is pronounced and then returns to the old rule with respect to all others arising on facts predating the pronouncement.  *Beam*, —— U.S. at ——, 111 S.Ct. at 2448.

On December 19, 1991, § 27A was signed into law.  The statute provides that:

(a) EFFECT ON PENDING CAUSES OF ACTION—The limitation period for any private action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) EFFECT ON DISMISSED CAUSES OF ACTION—Any private civil actions implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

---

**4.** Allegations regarding the Estee Lauder Sale, the Inventory and the Montreal Litho Sale are new to the Amended Complaint.

shall be reinstated on motion by the plaintiff no later than 60 days after the date of enactment of this section.[5]

D & T argues that § 27A is unconstitutional because it violates separation of powers principles by (1) prescribing a rule of decision in certain pending cases without changing the law and (2) directing federal courts to apply a law inconsistent with what D & T claims to be the "constitutional mandate" established in *Beam*. As such, D & T maintains that this court must apply *Lampf*'s statute of limitations, under which D & T contends the Investors' § 10(b) claims are time-barred.

This court has had the opportunity to review the arguments made and authorities cited by D & T on a prior occasion and has rejected these challenges, among others, to § 27A's constitutionality. *See Rabin v. Fivzar Assocs.*, 801 F.Supp. 1045, 1051 (S.D.N.Y.1992). Adhering to the holding expressed in that opinion, the portion of D & T's motion based on the statute of limitations is denied.

B. *Rule 9(b): Failure to Plead Fraud with Particularity*

■■■ The second prong of D & T's motion to dismiss is based on Federal Rule of Civil Procedure 9(b), which provides in relevant part that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To satisfy this rule, a pleading must specify the time, place, speaker and content of the alleged misrepresentations or omissions, *see Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986), the nature of the defendant's alleged participation in the fraud, *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), and factual circumstances giving rise to a "strong inference" that the defendant possessed the requisite fraudulent intent. *O'Brien v. National Property Analysts Partners*, 936

F.2d 674, 676 (2d Cir.1991). Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of a plaintiff's claim; (2) to protect a defendant from harm to his reputation or goodwill; and (3) to reduce the number of strike suits. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

■■■ Rule 9(b) must be read, however, in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claims showing that the pleader is entitled to relief." *See Di Vittorio*, 822 F.2d at 1247. Moreover, on a motion to dismiss on Rule 9(b) grounds, a court must assume the truth of the plaintiffs' allegations and draw all inferences in favor of the pleader. *O'Brien*, 936 F.2d at 676–77; *Cosmas*, 886 F.2d at 11.

D & T does not take issue, in my opinion correctly, with the Amended Complaint's compliance with Rule 9(b) to the extent that it sufficiently particularizes the time, place and content of the allegedly fraudulent representations or omissions and the nature of D & T's alleged participation in the alleged fraud. Rather, D & T's motion relates exclusively to the Investors' allegations of scienter. D & T argues that, while the Amended Complaint may allege facts supporting a claim of negligence with respect to the Review Report and Consent Letter, and undisputedly contains general, conclusory allegations of scienter, it is devoid of factual allegations supporting a "strong inference" that D & T possessed information indicating the true financial condition of QMAX at the time it issued these documents.

■■■ A basis for inferring scienter exists where facts are alleged that show that the defendant possessed a motive to defraud and had a clear opportunity for doing so or that identify circumstances indicating conscious behavior by the defendant. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). For § 10(b) purposes, conscious be-

---

**5.** Because no claims were dismissed as time barred subsequent to June 19, 1991, only

§ 27A(a) applies here.

havior can take the form of intent to defraud, knowledge of the falsity or a reckless disregard for the truth. *See Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 144 (2d Cir.1991) (under § 10(b), scienter includes recklessness); *Griffin v. McNiff,* 744 F.Supp. 1237, 1245 (S.D.N.Y.1990).[6] An inference of "recklessness" satisfying the scienter requirement may be drawn from facts demonstrating conduct that the defendant disseminated material "knowing [it was] false or that the method of preparation was so egregious as to render [the] dissemination reckless." *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103, 137 (S.D.N.Y.1989), *quoted in CL–Alexanders Laing & Cruickshank v. Goldfeld,* 739 F.Supp. 158, 163 (S.D.N.Y.1990); *see also Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.) (recklessness is conduct that is "at least 'highly unreasonable' and ... represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' "), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 394 (S.D.N.Y.1988) *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 259 (S.D.N.Y.1989) ("[a]n egregious refusal to see the obvious, or to investigate the doubtful" may give rise to an inference of recklessness), *cited in Friedman v. Arizona World Nurseries, Ltd.,* 730 F.Supp. 521, 532 (S.D.N.Y.1990).

In *Ades I,* the "Substantive Allegations" were held deficient under Rule 9(b) because "[t]he allegations on information and belief concerning D & T's knowledge of QMAX's financial condition and the supposed falsity of its financial statements are conclusory, with no facts alleged which would support the Investors' beliefs." In *Ades II,* the "GAAS/GAAP Allegations" were dismissed under Rule 9(b) because "[t]he paragraphs of the Complaint describing how D & T 'knew or was reckless in not knowing that QMAX's financial statements violated the principles of fair reporting and GAAP,' are devoid of any 'facts establishing that [D & T] had become aware' of any of the conditions forming the basis of its alleged violations of GAAS and GAAP."

Despite the infirmities of the original Complaint, the Amended Complaint's new factual allegations relating to the Estee Lauder Sale and the Montreal Litho Sale satisfactorily plead D & T's scienter with respect to both the Substantive Allegations and the GAAS/GAAP Allegations.[7]

6. D & T contends that a showing of "recklessness" satisfies § 10(b)'s scienter requirement only if it is also established that the defendant possessed a motive to defraud. *See* D & T Reply Memo. at 13, 17–19 (citing, *inter alia, In re Fischbach Corp. Secs. Litig.,* No. 89 Civ. 5826, slip op., 1992 WL 8715 (S.D.N.Y. Jan. 15, 1992)). This argument fails for two reasons. First, the Second Circuit has repeatedly acknowledged the viability of the recklessness standard without such a qualification. *See, e.g., Breard,* 941 F.2d at 144. Second, the case upon which D & T primarily relies for this proposition, *In re Fischbach Corp. Secs. Litig.,* is distinguishable in that the court there found that the complaint failed to plead facts giving rise to an inference of scienter because the pleading demonstrated that the defendant had a motive *not* to defraud. *See id.,* slip op. at 6 ("[W]e hold only that in the particular circumstances where the plaintiff does not allege wilful blindness or facts supporting an inference of wilful blindness, *and the complaint's allegations actually undermine the plausibility of wilful blindness,* an allegation of recklessness is insufficient to meet the scienter requirement of § 10(b)." (emphasis added)).

7. In addition to their contention that the Amended Complaint pleads facts establishing knowing or reckless conduct by D & T, the Investors argue that an inference of scienter is justified on the grounds that (1) D & T is an "insider" with respect to the Review Report and (2) the Amended Complaint alleges that D & T had a motive to perpetrate a fraud in the Review Report. These arguments are unpersuasive.

With respect to the first point, as D & T points out, courts within this circuit have consistently held that independent accountants are not insiders. *See, e.g., Di Vittorio,* 822 F.2d 1242; *O'Brien v. National Prop. Analysts Partners,* 719 F.Supp. 222 (S.D.N.Y.1989); *Bruce v. Martin,* 691 F.Supp. 716 (S.D.N.Y.1988). Moreover, acceptance of this argument would lead to the absurd result, totally at odds with the purposes of 9(b), of turning every accountant in every securities fraud case into an insider.

As for the second point, the Amended Complaint's allegation of motive is inadequate to raise an inference of scienter because it is completely circular. The Investors allege that "D & T had a motive to delay disclosure of the true

*The Substantive Allegations*

■ According to the Amended Complaint, D & T knew or was reckless in not knowing that the inclusion of $315,000 in accounts receivable as of June 30, 1987 due to the Estee Lauder Sale constituted a material overstatement. The transaction took place under an invoice dated June 30, 1987, the last day of QMAX's reporting period. The Amended Complaint alleges that this transaction should not have been recorded as a sale as of that date and included in accounts receivable because, according to QMAX's production records, the goods referred to in the invoice were not ready for sale at that time. Am.Comp. ¶ 34.

The Amended Complaint alleges that D & T knew or was on notice that a material modification needed to be made to prevent the financial statements from being false and misleading because the production records evidencing the unavailability of the goods for the sale as of June 30, 1987 "were available to D & T for inspection at the review." *Id.* The Amended Complaint further alleges that D & T:

> had sufficient reason and was aware of enough red flag warnings to make specific inquiries regarding the [Estee Lauder Sale] in light of the facts that the $315,000 sale was: (1) booked on the last day of the fiscal year ended June 27 [sic?], 1987; (2) constituted approximately 20% of QMAX's reported trade accounts receivable at June 30, 1987; and (3) the ... invoice had been outstanding from January 1987 through January 1988 which was over 180 days and accordingly it was easily considered a "problem" receivable for which D & T knew special analytical procedures should have been performed.

*Id.* ¶ 35. Additionally, ¶ 35 alleges that D & T knew that QMAX's books were unreliable, as evidenced by a December 1, 1987 letter from D & T to QMAX advising that QMAX had no policy regarding the documentation of communications concerning problem accounts receivable. *Id.* Finally, ¶ 43 alleges that D & T received a letter from Estee Lauder dated September 21, 1987 indicating that title would pass to Estee Lauder when the materials were prepared in accordance with Estee Lauder specifications.

■ These allegations support the inference of reckless disregard. It is true, as D & T points out, that *"[i]n and of itself,* ... a failure to investigate does not rise above the level of negligence *unless there are factual allegations which tend to establish knowledge of the alleged fraudulent acts," Griffin,* 744 F.Supp. at 1251 (emphasis added); *see also The Limited, Inc.,* 683 F.Supp. at 394 (allegation of failure to take audit steps under GAAS to determine extent of inventory markdowns does not rise above allegation of negligence absent factual allegations establishing defendant's knowledge that inventory practices were defective), and that "[i]t is not enough for plaintiff to show that defendant failed to detect certain material facts *when [it] had no reason to suspect their existence," The Limited, Inc.,* 683 F.Supp. at 394–95 (emphasis added). In this case, however, paragraphs 35 and 43 *do* allege facts which, taken together, suggest that D & T had reason to suspect a problem with the accounting of the Estee Lauder Sale, raising its failure to investigate further from mere negligence to reckless disregard. *See Siemens Info. Sys., Inc. v. TPI Enters., Inc.,* Fed.Sec.L.Rep. [CCH] ¶ 96,-573 at 92,663, 1992 WL 51559 (S.D.N.Y. 1992) (pleading satisfied scienter requirement where it alleged accountant's "awareness of Siemens' concern over 'potential problems' with the Financial Statements"); *Nationwide Cellular Serv., Inc. v. American Mobile Comms., Inc.,* Nos. 90 Civ.

---

financial results until after 1988 because it had previously, in Registration Statements and amendments, filed with the SEC on April 13, 1988, July 20, 1988 and August 5, 1988, represented that there were no material changes in QMAX's financial position since its audit report on QMAX's 1987 financial statements." Assuming that this constitutes a legally cognizable

"motive" in the first place, these are allegations of the same type of fraud that allegedly infects the Review Report and Consent Letter and, as such, themselves require a pleading of scienter. *See Wexner v. First Manhattan Co.,* 902 F.2d 169, 173 (2d Cir.1990) (inference of scienter cannot be based on allegations that are themselves speculative).

6493, 91 Civ. 3587 (LBS), slip op., 1991 WL 233284 (S.D.N.Y. Oct. 29, 1991).

Similarly, the Amended Complaint pleads facts supporting the inference that D & T recklessly disregarded the alleged overstatement of $426,000 attributable to the booking of the Montreal Litho transaction as a sale rather than as a consignment. Paragraph 37 alleges that, at the time of the Review Report, D & T knew that QMAX had not been paid for the transaction and that the receivable was over one year old; that, whereas Montreal Litho accounted for 23% and 15% of QMAX's net sales in 1987 and 1986, respectively, it had failed to order any more products from QMAX; and that:

> prior to the time it consented to the use of its Review Report, D & T, in effect, admitted that it knew of problems with earlier reported results because D & T had to delay giving its audit opinion on QMAX's latest annual financial statements ... until it could resolve and reconcile, *inter alia*, all the accounts receivable.... In addition, the D & T personnel responsible for the review admitted that they knew or were uncertain whether QMAX's accounts receivable were fairly presented in conformity with GAAP because, prior to the issuance of [the Consent Letter], Ed Bentley and Thomas Knipper said specifically that the "Montreal Litho" issue would have to be fully resolved before D & T would issue its audit report on the 1988 financial statement.[8]

Am.Comp. ¶ 37

Taken together, these allegations raise the inference that D & T suspected that something was amiss with this transaction, yet failed to take further steps to determine the nature of the problem before issuing the Review Report and Consent Letter. According to the Amended Complaint, such an investigation would have led D & T to discover that the terms of the contract with

Montreal Litho provided that payment was not due and risk of loss did not pass until the goods were accepted by Montreal Litho's customers and therefore that receivables were overstated. Thus, the Amended Complaint adequately pleads D & T's scienter with respect to the overstatement attributable to the Montreal Litho Sale.

The Amended Complaint does not, however, plead facts from which it can be inferred that D & T knew or recklessly disregarded that the financial statements were overstated by $82,000 due to the reinstatement of inventory that did not exist. While the Amended Complaint alleges in detail the circumstances giving rise to the alleged overstatement, and that QMAX's receiving reports as of June 30, 1987 reflected that the raw materials necessary to formulate the 400 kilos were not received as of June 30, 1987, it does not allege that D & T was aware of these receiving reports or any other source indicating the non-existence of the inventory. Furthermore, in contrast to their allegations regarding the Estee Lauder Sale and the Montreal Litho Sale, the Investors have failed to plead any facts establishing that D & T had any reason to be suspicious of this entry. The allegation contained in ¶ 36 that D & T had advised QMAX to develop a cost accounting system to determine pricing and inventory is not a sufficient basis on which to conclude that D & T deliberately closed its eyes to facts indicating that the Inventory was overstated. As such, these allegations do not rise above a charge of negligence. *See The Limited, Inc.*, 683 F.Supp. at 394.

### GAAS/GAAP Allegations

The Amended Complaint also satisfactorily pleads D & T's scienter with respect to the GAAS/GAAP Allegations to the extent they relate to the Estee Lauder Sale and the Montreal Litho Sale. The Investors

---

8. D & T argues that this last allegation (regarding the "admissions" of Bentley and Knipper) "directly contradicts plaintiffs' fraud claims" in that the Investors cannot adequately plead reliance on the Review Report if they were warned that there were problems with QMAX's receivables. This assertion reads additional language into the Amended Complaint, however. The pleading does *not* allege that these individuals made these statements to the Investors and thus has no bearing on the pleading of reliance.

**1502**

specify the various accounting standards violated by the accounting of these transactions in the financial statements, *See* Am. Comp. ¶¶ 42, 44, 46, 47, and allege that D & T knowingly or recklessly ignored these principles in conducting the Review. The allegations supporting an inference of reck-lessness with respect to the overstatements attributable to the Estee Lauder Sale and the Montreal Litho Sale also serve to undergird the allegation of recklessness with respect to D & T's representation that the financial statements were in conformity with GAAP and other accounting standards. *Cf. National Union Fire Ins. Co. v. Cooper,* 729 F.Supp. 1423, 1433 (S.D.N.Y.1989).

### Aiding and Abetting Claim

To establish aiding and abetting liability under § 10(b), a plaintiff must demonstrate: (1) a securities violation by a primary wrongdoer, (2) knowledge of the wrongdoing, and (3) substantial assistance in the primary wrongdoing. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). D & T has attacked the Amended Complaint's pleading only of the scienter element, albeit in a footnote in its Reply Memorandum. *See* D & T Reply Memo. at 14 n. 14. D & T argues that the Investors have failed to plead the degree of scienter necessary to support an aiding and abetting claim on the grounds that, absent the existence of a fiduciary duty to plaintiffs, such "scienter is of the high 'conscious intent,' or ... 'something closer to an actual intent to aid in the fraud.'" *IIT v. Cornfeld,* 619 F.2d 909, 925 (2d Cir.1980); *see Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F.Supp. 531, 552 (S.D.N.Y.1990). As such, D & T contends, even if the Amended Complaint is found to support an inference of reckless-ness, this state of mind is insufficient to satisfy the scienter requirement of an aiding and abetting claim.

According to the Amended Complaint, D & T knew that its Review Report would be disseminated to the Investors and relied upon by them in making their investments in the Notes. *See, e.g.,* Am.Comp. ¶ 52. It has been held that such a role gives rise to a fiduciary duty "to

those who foreseeably read and rely on the statements." *See Cooper,* 729 F.Supp. at 1433. Thus, the Amended Complaint's allegations supporting an inference of reck-lessness satisfy the scienter requirement of the aiding and abetting claim. Even in the absence of a fiduciary relationship, the recklessness allegations would suffice because, as already concluded, the Amended Complaint withstands D & T's attack on the primary violation claim against it. *See Mishkin,* 744 F.Supp. at 552 ("The more closely related the alleged aider and abettor is to the primary violation, the lower the level of scienter required").

### Conclusion

For the foregoing reasons, the motion by D & T, Schuberth and Randall to dismiss the Amended Complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) is denied.

It is so ordered.