886 F.2d 8
 Fed. Sec. L. Rep. P 94,711, 14 Fed.R.Serv.3d 1149
 Nicholas COSMAS, Plaintiff-Appellant,
v.
James P. HASSETT, Gerard V. Carey, James M. Cooke, Benjamin
S. DeYoung, Lawrence R. Miles, C. Bruce Newberry,
Thomas W. Russell, Jr. and Norman S.
Sherwood, Defendants-Appellees.
 No. 1108, Docket 89-7112.
 United States Court of Appeals,
Second Circuit.
 Argued May 8, 1989.
Decided Sept. 12, 1989.
 
 I. Stephen Rabin, New York City (Saul Roffe, Rabin & Sirota, New York City, of counsel), for plaintiff-appellant.
 Gregory J. Wallance, New York City (Jay G. Strum, Richard A. Mescon, Herbert Schrank, Donna M. Gerber, Sara L. Shudofsky, Kaye, Scholer, Fierman, Hays & Handler, New York City, Goldstein, Schrank, Segelstein & Shays, New York City, Webster & Sheffield, New York City, of counsel), for defendants-appellees James P. Hassett, Gerard V. Carey, James M. Cooke, Benjamin S. DeYoung, Thomas W. Russell, Jr. and Norman S. Sherwood.
 Angelo G. Savino, New York City (Charles M. McCaghey, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, of counsel), for defendant-appellee Lawrence R. Miles.
 Before KEARSE, CARDAMONE and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Nicholas Cosmas appeals from an order of the United States District Court for the Southern District of New York, Judge John Walker, Jr., which dismissed Cosmas' amended complaint for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). We believe that the amended complaint did satisfy the requirements of Rule 9(b). Therefore, we vacate the order of the district court and remand to the district court for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 In a complaint dated March 5, 1987, Cosmas, the plaintiff, alleged that he purchased securities of Inflight Services, Inc. ("Inflight"). He further alleged that the eight named defendants were directors of Inflight, and that these defendants defrauded him and other purchasers of Inflight securities in violation of both statutory and common law. In an order dated November 17, 1987, the district judge dismissed Cosmas' complaint for failure to plead fraud with particularity as required by Rule 9(b), but granted Cosmas leave to amend the complaint.
 
 
 3
 Cosmas filed an amended complaint dated December 7, 1987. Count One of the amended complaint charges the defendants with violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j, and Rule 10b-5 promulgated under that Act, 17 C.F.R. Sec. 240.10b-5. Count One sets forth the following allegations:
 
 
 4
 In 1985, Inflight was principally engaged in the business of providing projection and video equipment and services in three markets: the airline industry, the marine market and the "institutional" market. (p 14). Through March 31, 1985, Inflight, as part of its institutional market, had customers in the People's Republic of China ("the PRC"). (p 15). Between April 1, 1985 and June 30, 1985, the PRC imposed significant import restrictions which restricted Inflight's sales to customers in the PRC. (p 26).
 
 
 5
 In Inflight's 10K form for the fiscal year which ended June 30, 1985 ("1985 10K"), which Inflight filed with the Securities and Exchange Commission on or about October 1, 1985, (p 16), Inflight stated that the revenue increase at Inflight from fiscal 1984 to fiscal 1985 was "primarily the contribution of increased sales in the institutional market," (p 17). The 1985 10K reported that as of September 1, 1985, purchase orders for the future delivery of institutional projection equipment had an estimated value of $6 million and that this backlog of orders was expected to generate at least $5 million in revenue in the 1986 fiscal year. (p 20).
 
 
 6
 On or about August 26, 1985, an article appeared in Forbes magazine which reported on an interview with one of the defendants, Lawrence R. Miles, who was then the chief executive officer of Inflight. The article stated that "[s]ales to the People's Republic of China ... are also an important new source of revenue" for Inflight. (p 18). According to the amended complaint, Inflight had approached Forbes to write the article, and provided Forbes with the information which the article contained. (p 35).
 
 
 7
 Inflight's 1985 Annual Report to Shareholders ("1985 Annual Report"), which was issued on or after October 15, 1985, asserted that "the profitability from Inflight's revenues continues to improve as revenues from institutional sales increase." (p 21). Defendant Miles signed the 1985 Annual Report and the 1985 10K, and, according to the amended complaint, the other defendants read these documents before they were issued. (p 36).
 
 
 8
 In the 1985 fiscal year, Inflight earned $2.76 million, or $.95 per share, the highest earnings the company had ever attained. (p 22). In a press release issued on or about October 15, 1985, Inflight announced that it expected its per share earnings for the fiscal year ending June 30, 1986 to be between $.90 and $1.15. (p 23). In a press release issued on or about November 8, 1985, Inflight repeated its earlier prediction for the per share earnings for fiscal 1986. (p 24). Inflight repeated this prediction yet again at its annual shareholder meeting which was held on or about February 11, 1986. (p 25).
 
 
 9
 Thereafter, on or about May 9, 1986, Inflight announced a "write down" of $2.5 million worth of inventory. (p 27). In its 1986 10K form ("1986 10K"), Inflight stated that the cause of the write down of inventory was the cancellation of anticipated sales to customers in the PRC due to the PRC's import restrictions. (p 28). The 1986 10K stated that of the backlog of $6 million worth of purchase orders for institutional projection equipment which existed in September 1985, "$5 million of that was for export sales to the People[']s Republic of China. Those sales were not made due to import restrictions imposed by that country." (p 28).
 
 
 10
 In October 1986, Inflight announced a net loss for fiscal 1986. (p 32). In November 1986, Inflight announced that it was entering bankruptcy reorganization proceedings. (p 33).
 
 
 11
 According to the amended complaint, the following statements were false and misleading and therefore in violation of the securities laws: (1) the statement in the Forbes article regarding sales to the PRC; (2) the statement in the 1985 10K regarding the expectation of $5 million worth of sales to institutional customers in fiscal 1986; and (3-5) the predictions of earnings per share for the 1986 fiscal year announced in the press releases of October and November 1985 and at the shareholders' meeting in February 1986 ("the earnings predictions"). (p 34). The amended complaint asserts that these five statements were false and misleading because the PRC's import restrictions prevented further sales to customers in the PRC. (p 34).
 
 
 12
 According to the amended complaint, all of the defendants acquiesced in the false and misleading statements with knowledge of their falsity or with reckless disregard for their truth. (p 37). The alleged result of these statements was artificially to inflate or to maintain the price of Inflight's securities. (p 38). The amended complaint alleges that Cosmas and others relied to their detriment on the five fraudulent statements (p 39) and suffered substantial damage as a result of purchasing Inflight securities at inflated prices (p 40).
 
 
 13
 In a memorandum and order dated December 23, 1988, the district court dismissed the amended complaint for failure to satisfy the pleading requirements of Rule 9(b). The district judge concluded that the amended complaint failed to plead fraud with particularity and failed to adequately plead scienter. The district court also wrote that certain statements in the 1985 Annual Report and the 1985 10K--statements which were not quoted in the amended complaint--undermined the claim of fraud since those statements disclosed the PRC's import restrictions. The district court took the position that the amended complaint incorporated the 1985 Annual Report and 1985 10K by reference, and therefore the court could properly examine parts of those documents which were not referred to in the amended complaint.
 
 
 14
 This appeal followed.
 
 DISCUSSION
 A. Particularity
 
 15
 Rule 9(b) states in part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits. Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).
 
 
 16
 To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. See Goldman v. Belden, 754 F.2d 1059, 1069-70 (2d Cir.1985). On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader. See Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir.1985).
 
 
 17
 We conclude that the amended complaint herein satisfies the particularity requirement of Rule 9(b). First, in paragraph 34, the amended complaint clearly specifies the five statements Cosmas contended were false and misleading. The amended complaint also adequately details when and where the allegedly fraudulent statements were made (paragraphs 18, 20, 23-25) and adequately identifies the defendants as those responsible for the statements (paragraphs 35-37).
 
 
 18
 Moreover, we conclude that the amended complaint sufficiently gives particulars as to the respect in which these five statements are believed to be fraudulent. Paragraph 34 of the amended complaint alleges that the statement in the Forbes article was false because that statement identified the PRC as an important new source of revenue after the PRC had imposed import restrictions which "made it impossible for Inflight to make any sales to that country." Paragraph 34 alleges that the statement in the 1985 10K was false in the same respect; after the imposition of the PRC's import restrictions, the 1985 10K reported that $5 million from a backlog of $6 million worth of purchase orders for institutional projection equipment was expected to be delivered in fiscal 1986 (p 20), even though, as the 1986 10K later revealed (p 28), $5 million worth of these purchase orders were from customers in the PRC and the PRC's import restrictions would prevent the consummation of sales to that country. As to the last three statements, paragraph 34 alleges that the three earnings predictions were false because the predictions were "based on substantial sales to China which were impossible to achieve because of import restrictions."
 
 
 19
 In concluding that the amended complaint failed to pass muster under Rule 9(b), the district court wrote that Cosmas' conclusion that Inflight's earning predictions were fraudulent "is not automatic.... That is, it still is unclear whether there were other prospects for income. Plaintiff only baldly asserts that there were no other prospects for income, and that the defendants based their projection on the expected revenues from China." The district court's analysis failed to follow our mandate that on motions to dismiss, complaints should be read generously, and all inferences should be drawn in favor of the pleader. See Yoder, 751 F.2d at 562. Read generously, the amended complaint does allege with sufficient particularity the respect in which the earnings predictions were false. Paragraph 17 purports to quote the 1985 10K as stating that Inflight's recent financial upsurge was "primarily the contribution of increased sales in the institutional market." Paragraph 19 alleges that in September 1985 Inflight was responsible for the following statement: "[T]he profitability from Inflight's revenues continues to improve as revenues from institutional sales increase and represent a growing percentage of total revenues...." The 1986 10K, according to paragraph 28, stated that five-sixths of the value of the 1985 backlog of purchase orders for institutional projection equipment consisted of orders from customers in the PRC. In light of Inflight's alleged emphasis on the importance of the institutional market to its profitability, and the apparently significant portion of revenues from institutional sales which came from the PRC, we conclude, drawing all inferences in favor of Cosmas, that the amended complaint alleges sufficient facts to support its charge that Inflight's earnings predictions were false and misleading. Perhaps at a later stage of this litigation facts may reveal that the earnings predictions had a basis other than expected sales to the PRC. However, the possibility of such a subsequent revelation does not defeat the amended complaint at this stage of the proceedings. In sum, we conclude that the amended complaint satisfied the particularity requirement of Rule 9(b).
 
 B. Scienter
 
 20
 Rule 9(b) states that in averments of fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Although under Rule 9(b) a complaint need only aver intent generally, it must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent. Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), overruled on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989) (en banc).
 
 
 21
 In our view, the amended complaint herein satisfies the scienter requirement of Rule 9(b). As already discussed, the amended complaint alleges facts from which one can reasonably infer that sales to the PRC were to represent a significant part of Inflight's business. These facts give rise to a strong inference that the defendants, who the amended complaint alleges were directors of Inflight, had knowledge of the PRC import restrictions, since the restrictions apparently eliminated a potentially significant source of income for the company. In light of the strong inference that the defendants, at the time the allegedly fraudulent statements were made, had knowledge of the PRC import restrictions, we conclude that the amended complaint alleges sufficient facts from which it can be inferred that the defendants had the requisite fraudulent intent.
 
 
 22
 In holding that the amended complaint failed to satisfy the scienter requirement, the district court wrote that "[t]he Amended Complaint never explains why the defendants may have acted fraudulently." The district court's analysis is erroneous. To satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff, as Cosmas does here, adequately identifies circumstances indicating conscious behavior by the defendants. Beck, 820 F.2d at 50. In any case, the allegations in the amended complaint herein do establish a motive. The amended complaint asserts that the defendants owned shares of Inflight (p 6) and that the allegedly fraudulent statements artificially inflated or maintained the prices of Inflight securities (p 38). As we stated in Goldman, 754 F.2d at 1070: "the ... implication of the Complaint is that the alleged failure to qualify the bullish statements was intended to permit individual defendants to profit from an inflated market price before the truth became known." In sum, we conclude that the amended complaint satisfied the scienter requirement of Rule 9(b).
 
 C. Incorporation by Reference
 
 23
 To bolster its conclusion that the amended complaint failed adequately to plead fraud, the district court noted that certain statements in the 1985 Annual Report and the 1985 10K disclosed information about the PRC's import restrictions. These statements did not appear in the amended complaint. To justify its use of the statements, the district court held that the amended complaint, by citing the 1985 Annual Report and the 1985 10K, incorporated those documents by reference.
 
 
 24
 We believe that the district court erred by using these statements in its analysis. On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984), and to any documents attached as exhibits or incorporated by reference, Goldman, 754 F.2d at 1065-66. Here, the 1985 Annual Report and the 1985 10K were not attached as exhibits to the amended complaint nor were they incorporated by reference. The amended complaint merely discussed these documents and presented short quotations from them. "[L]imited quotation does not constitute incorporation by reference." Goldman, 754 F.2d at 1066. Cf. National Ass'n of Pharmaceutical Mfrs. v. Ayerst Laboratories, 850 F.2d 904, 910 n. 3 (2d Cir.1988) (magistrate was authorized to treat letter as incorporated by reference into complaint when, inter alia, plaintiffs quoted entire text of letter in a memorandum of law). Since the 1985 Annual Report and the 1985 10K were neither attached as exhibits nor, by only being briefly excerpted, incorporated by reference, the district court erred in relying in its analysis upon statements from these documents which did not appear in the amended complaint.CONCLUSION
 
 
 25
 We believe that the amended complaint satisfied the pleading requirements of Rule 9(b), therefore, we vacate the order of the district court and remand for further proceedings consistent with this opinion.