**RAMAPO LAND CO., INC., Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION and Budco Group, Inc., Defendants,**

**and Third–Party Action.**

**No. 94 Civ. 5668 (WCC).**

United States District Court, S.D. New York.

March 11, 1996.

---

124

Birbrower, Montalbano, Condon & Frank, P.C., New City, New York, for Plaintiff; Gerard Amalfitano, of counsel.

Walker & Bailey, New York City, for Defendant Consolidated Rail Corporation; Samuel A. Moore, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Ramapo Land Co., Inc. ("Ramapo"), a New York corporation, brought this action for negligence and breach of contract against defendants Consolidated Rail Corporation ("Conrail"), a Pennsylvania corporation, and Budco Group, Inc. ("Budco"), an Ohio corporation. Presently before the court is plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b), dismissing various counterclaims asserted by Conrail. For the reasons discussed below, the motion is denied.

## BACKGROUND

This diversity action arises out of an accident that occurred on August 3, 1993. A train operated by Conrail struck and destroyed a bridge (the "Conrail Bridge") which provided access to real property owned by plaintiff, on which are located a warehouse and residential housing. Defendant Budco loaded the COFC (container on flat car) which struck the Conrail Bridge. Ramapo asserted claims for negligence and breach of contract in connection with the destruction of and delay in repairing the Conrail Bridge.

In February 1994, Ramapo and Conrail entered into an agreement whereby Conrail agreed to pay for the upgrade of an alternate access road (known as Torne Brook Road) to "provide an emergency temporary alternate means of access to residences located on the ... properties belonging to Ramapo pending the repair, reconstruction and replacement of the Bridge." Pl.'s Mem. of Law in Support of Motion for Summary Judgment, Ex. A (the "Torne Brook Road Agreement"). Plaintiff brought this action to recover damages for the loss of use of its property, alleging loss of rental income caused by the fact that there was no primary access to

Ramapo's property after the Conrail Bridge was destroyed, exacerbated by Conrail's inexcusable delay in repairing the bridge. Plaintiff further alleged that Conrail was required by agreement to maintain the Conrail Bridge.[1]

As a separate but related issue in this case, plaintiff seeks specific performance and alleged further damages with respect to the closing of a grade crossing (the "Grade Crossing") by Conrail, which plaintiff alleges Conrail is required to maintain and allow plaintiff to use for truck access to plaintiff's warehouse. The Grade Crossing dispute is not a subject of the instant motion.

Conrail asserted crossclaims against Budco for negligently loading the COFC which struck and destroyed the Conrail Bridge. Conrail and Budco have stipulated as to the apportionment between them of any damages recovered by Ramapo on its claim for lost rental income caused by the destruction and delay in repair of the Conrail Bridge. Conrail asserted counterclaims against Ramapo, alleging, *inter alia,* (1) that plaintiff knowingly made material misrepresentations to Conrail to induce Conrail to enter into the Torne Brook Road Agreement (the "second counterclaim"), (2) that Conrail is not required to maintain the Conrail Bridge (the "third counterclaim"), (3) that plaintiff was unjustly enriched by its fraudulent misrepresentation to Conrail which induced Conrail to enter into the Torne Brook Road Agreement (the "fifth counterclaim"), and (4) that Conrail is entitled to punitive damages (the "sixth counterclaim"). The gravamen of Conrail's second and fifth counterclaims for misrepresentation and unjust enrichment is that plaintiff represented to Conrail that Torne Brook Road had to be upgraded to accommodate the anticipated increase in traffic due to the destruction of the Conrail Bridge. Conrail alleges that plaintiff represented to Conrail that Torne Brook Road was needed for emergency vehicles, school buses, large trucks and other vehicles (which purportedly had used the Conrail Bridge prior to August 9, 1993) to access plaintiff's land. The only other

---

**1.** Liability for damage to the Conrail Bridge itself apparently is not at issue; the bridge has been rebuilt at the cost of defendants.

access to plaintiff's property, the Grade Crossing, had been closed by Conrail. Conrail claims that after it entered into the Torne Brook Road Agreement and paid to upgrade Torne Brook Road, it learned that (1) the Conrail Bridge never was used for the purposes that plaintiff claimed it was, thus bringing into question whether or not Conrail was legally or morally obligated to pay for the upgrade to accommodate an increase in traffic that supposedly would result from the destruction of the Conrail Bridge and (2) even before August 3, 1993, plaintiff already had planned to conduct certain upgrades to Torne Brook Road and therefore received a windfall by inducing Conrail to foot the bill for the upgrade. Conrail's third counterclaim seeks a declaratory judgment relieving it of any obligation under any agreement with plaintiff or plaintiff's predecessors in interest executed prior to April 1, 1976, including an 1881 agreement which, according to plaintiff, requires Conrail to maintain the Conrail Bridge (the "1881 Agreement").

## DISCUSSION

Plaintiff seeks summary judgment on Conrail's second, fifth, and sixth counterclaims on the ground that it is undisputed that there was no misrepresentation in reaching the Torne Brook Road Agreement, and on Conrail's Third counterclaim on the ground that the federal statute on which Conrail relies does not apply to the 1881 Agreement which purportedly requires Conrail to maintain the Conrail Bridge.

■ A moving party is entitled to summary judgment pursuant to Rule 56(c) if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences in favor of the nonmoving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

## I. Rule 3(g)

■ As a preliminary matter, we address Conrail's argument that Ramapo Land failed to comply with procedural requirements of Local Rule 3(g) of the United States District Court for the Southern District of New York. Rule 3(g) provides that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Failure to submit such a statement constitutes grounds for denying summary judgment. We are reluctant, however, to raise form over substance in a case such as this where the moving party's affidavit sets forth a statement of uncontested material facts upon which the movant bases its motion for summary judgment. *See* Affidavit of Gerard Amalfitano ("Amalfitano Aff."). Counsel's failure to abide by basic procedural requirements gives reason for pause, but his affidavit satisfies the essential elements that Rule 3(g) was intended to address. Though it is a far cry from a model 3(g) statement, it is a sworn statement of uncontested facts and provides sufficient notice to the nonmoving party concerning the facts upon which summary judgment is sought. We therefore address the merits of plaintiff's motion to dismiss Conrail's counterclaims.

## II. Misrepresentation

■ Conrail's second counterclaim for misrepresentation alleges fraud. "New York requires proof of the traditional five elements of fraud: misrepresentation of a material fact, falsity of that representation, scienter, reliance and damages." *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980) (citing *Jo Ann Homes v. Dworetz,* 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 216–17 (1969)), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981).

■ Because federal law governs the degree of particularity with which fraud must be pleaded in a complaint filed in federal court, even when fraud claims are brought under state law, *see Stern v. General Elec. Co.,* 924 F.2d 472, 476 n. 6 (2d Cir.1991), "allegations of fraud must be supported by particular statements indicating the factual circumstances on which the theory of fraud is based." *Id.* at 476. To withstand dismissal of this fraud claim, Conrail must satisfy the pleading requirements of Rule 9(b), namely that

> the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Rule 9(b)'s heightened pleading standard is a departure from Rule 8's requirement that plaintiff plead a "short and plain statement" setting forth the allegations and grounds for relief. The particularity requirement (1) affords the defendants fair notice of the facts upon which the claim is based; (2) safeguards the defendants' reputation and goodwill from unfounded charges; and (3) it discourages "strike suits." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which it contends the statements were fraudulent, state when and where those statements were made, and identify those responsible for the statements. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985). When facts are particularly within the defendant's knowledge, plaintiff need only plead the facts upon which its belief is based. *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987).

Conrail asserts its second counterclaim for misrepresentation as follows:

29. That prior to February 15, 1994, the Plaintiff induced the Defendant to enter into an Agreement whereby, the Defendant *inter alia,* paid the Defendant [sic—should read "Plaintiff"] $83,700.00.

30. That to induce the Defendant to enter into the Agreement of February 15, 1994, the Plaintiff knowingly made material misrepresentations of fact with the intent to induce the Defendant to enter into said Agreement.

31. The Defendant relied on the material representations of fact to its detriment and in entering into the Agreement.

32. By review of same, the Defendant has been damaged.

33. By reason of same, the Defendant is entitled to Judgment declaring said Agreement null and void.

34. By reason of same the Defendant is entitled to damages including, but not limited to, the return of the $83,700.00 paid by Defendant to Plaintiff and for costs of the construction of the Bridge involved herein, which is a sum in excess of $50,000.00.

Answer to Second Amended Compl., Countercl. and Cross-cl. ¶¶ 29–34.

■ Conrail fails to plead with specificity as to what statements were made and why such statements were false or misleading. Furthermore, Conrail fails to identify those who made such allegedly misleading statements. *Cosmas,* 886 F.2d at 11; *Goldman,* 754 F.2d at 1069–70. When facts are particularly within the defendant's knowledge, a claimant need only plead the facts upon which its belief is based. *DiVittorio,* 822 F.2d at 1247. Conrail, however, does not argue that the identity of the person or people who made allegedly misleading statements was peculiarly within Ramapo's knowledge. In any case, it would be absurd to suggest that Conrail was not aware of the identity of the person or people who made the allegedly misleading statements regarding the reasons that Torne Brook Road required upgrading. Nevertheless, to grant plaintiff summary judgment in this case would be to reward plaintiff for its inexcusable delay in bringing this motion on the eve of trial. Ordinarily, we would grant leave to

amend a claim that is dismissed for failure to satisfy Rule 9(b). If we were to grant plaintiff's motion, Conrail would be denied its opportunity to amend its counterclaim because of the upcoming trial. Also, plaintiff has had sufficient notice of Conrail's counterclaim for misrepresentation. Conrail summarizes its claim in its memorandum in opposition, and has asserted this claim at conferences before the court:

> In the discussions that preceded the signing of the Agreement, Ramapo misrepresented that the roadway needed to be repaired solely due to the unavailability of the bridge access to its property. The Plaintiff stated that the roadway repairs were necessary due to the increased traffic that would be caused by emergency vehicles, school buses, large trucks and other vehicles which had used the bridge prior to August 9, 1993. However, subsequent to making the payment to the Plaintiff, it was discovered that prior to the date of the Agreement, Ramapo had plans to do its own upgrading work to its private roads, thus negating the Plaintiff's representations that the road upgrades were necessary solely due to the unavailability of the bridge. Also, after the money was given to the Plaintiff, CONRAIL was made aware that emergency vehicles, school buses and utility trucks did not use the bridge prior to its collapse. These fraudulent representations constitute grounds for a valid cause of action.

Opp'n Mem., at 5. Plaintiff has had ample opportunity to conduct discovery, raise objections and file motions prior to this point in time. We conclude that it would be unjust to reward plaintiff for waiting until now, when Conrail would be denied an opportunity to amend its counterclaim, before seeking summary judgment dismissing Conrail's counterclaim.

■ Plaintiff argues that the deposition of Carl A. Roe, Jr., Principal Engineer, Public Improvement for Conrail proves that there are no genuine issues of material fact as to whether plaintiff fraudulently induced Conrail to enter into the Torne Brook Road Agreement. Pl.'s Mem., at 3. In essence, Mr. Roe testified in deposition that he was not aware of any misrepresentations made by plaintiff personnel with regard to the Torne Brook Road Agreement. However, the fact that Mr. Roe may not have been aware at the time of his deposition that plaintiff allegedly induced Conrail to enter the Torne Brook Road Agreement is not dispositive. As Mr. Roe stated in his affidavit in opposition to the motion, "During our meetings, we were informed by Ramapo personnel that the bridge which was knocked down was the primary access for the tenants on the property and that there was a need for immediate alternative access route.... Personnel from Ramapo informed us that emergency vehicles, school busses, large trucks and other vehicles, which normally would have used the bridge would be forced to use Torne Brook Road.... After the money was given to Ramapo, we were made aware that the emergency vehicles and school buses did not use the bridge for sole access to the Hamlet, prior to the collapse of the bridge." Aff. in Opp'n to Pl.'s Motion ¶¶ 5, 6, 9. Whether personnel from Ramapo made such representations and whether such representations were made fraudulently with the intent to induce Conrail to enter into the Torne Brook Road Agreement are issues of fact to be decided at trial.

### III. Unjust Enrichment

Conrail's fifth counterclaim for unjust enrichment is subject to the same analysis as the counterclaim for misrepresentation. Although a claim for unjust enrichment need not arise from fraud, Conrail must allege and prove that Ramapo was unjustly enriched as a result of the Torne Brook Road Agreement. This counterclaim is subject to the pleading requirements of Rule 9(b) because Conrail's only alleged basis for the claim that the enrichment was unjust lies in the averment that Ramapo fraudulently induced Conrail to execute the Torne Brook Road Agreement by misrepresenting certain facts upon which Ramapo Land knew Conrail would rely. However, for the reasons discussed in part II, *supra*, we deny plaintiff's motion for summary judgment dismissing Conrail's fifth counterclaim. A jury could reasonably conclude that plaintiff induced Conrail by misrepresentation to pay for the Torne Brook

Road upgrade, and was thereby unjustly enriched.

## IV. Punitive Damages

 Ramapo Land seeks dismissal of Conrail's claim for punitive damages in connection with the counterclaim for misrepresentation. Plaintiff argues that Conrail's counterclaim for punitive damages must be dismissed because (1) there is no basis for Conrail's misrepresentation counterclaim, (2) there is no basis for punitive damages "[u]nless a wrongful motive exists or intentional misdoing," and (3) punitive damages are not proper to redress a private wrong unless the public interest is also involved. Pl.'s Mem., at 10. First, whether or not there is a basis for Conrail's misrepresentation counterclaim will be determined at trial. Second, a jury will decide whether or not plaintiff manifested a "wrongful motive or intentional misdoing." Finally, under New York law, a defendant's wrongful acts are not required to be "aimed at the public to support an award of punitive damages in a fraud case." *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 880 F.2d 642, 649 (2d Cir.1989). Rather, punitive damages may be awarded when defendant's conduct constituted gross, wanton, or willful fraud or other conduct morally culpable to an extreme degree. *Id.; Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 371 (2d Cir.1988). Because these are issues properly decided by the trier of fact, we deny plaintiff's motion for summary judgment dismissing Conrail's sixth counterclaim for punitive damages.

## V. The 1881 Agreement

As its third counterclaim, Conrail seeks a declaration that an agreement entered into on June 1, 1881 by predecessors in interest of Ramapo and Conrail is null and void. Conrail alleges that the federal statute creating Conrail, 45 U.S.C. § 711 *et seq.,* eliminates any liability on the part of Conrail with respect to the 1881 Agreement, or any other agreement executed prior to April 1, 1976. *See* 45 U.S.C. § 743(b)(2). Ramapo moves for summary judgment dismissing this counterclaim on the ground that the federal statute does not apply to this agreement. How-

ever, we could not rule on the motion without determining whether any duties imposed by the 1881 Agreement survive the federal statute creating Conrail. This we cannot do because neither party has provided the court with a copy of this agreement. In most circumstances, we would entertain subsequent submissions to correct this apparent oversight. However, because Ramapo waited until the eve of trial to submit its motion, we deny summary judgment and will proceed to trial as scheduled.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied.

SO ORDERED.